Joseph Kendzior, Appellant, v. Illinois Steel Company, Appellee.

Gen. No. 14,182.

MASTER AND SERVANT—*when instructions need not be given inexperienced servant.* A master is not obliged to instruct an inexperienced servant as to dangers which are obvious or known to him.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed February 4, 1909.

F. H. TRUDE and JOSEPH K. MCMAHON, for appellant.

KNAPP, HAYNIE & CAMPBELL, G. R. CALL and WILLIAM BEYE, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The plaintiff, Kendzior, sued the defendant, the Illinois Steel Company in case, averring that he was injured by the defendant's negligence. No question is presented in respect to the pleadings. The court, at the close of the plaintiff's evidence, directed the jury to find the defendant not guilty, which the jury did, and judgment was rendered on the verdict.

The contentions of the plaintiff, by his counsel, are, that the court erred in instructing the jury to find for the defendant, and in overruling plaintiff's motion for a new trial.

The plaintiff was employed by defendant June 24, 1904. At that time he was nearly twenty-four years of age, and had been employed about two years and three or four months at blast furnaces. He seems to have been employed by the defendant as a common laborer, and was first put to work about nine o'clock in the morning of June 24, 1904, cleaning up. Next, and

about two o'clock of the same day, he was put to work knocking out castings from the flasks, or cases, in which they were. After he had knocked out about twenty of the castings he was put to work knocking out a larger casting from a case or flask, in doing which the accident occurred. The following statement, taken from appellee's argument, we find from the record to be substantially correct:

"The casting that was being knocked out at the time of the accident had been made by filling a mold with metal. The casting was incased in a flask.

The flask consisted of what is known as the truck and the cope. The truck was the lower part of the flask, the cope the upper part of the flask. The truck and the flask were twelve feet long; about two or three feet wide at the top, and each about eighteen inches deep; an iron frame two inches thick, without top or bottom. Across the top of the cope, which was the top part of the flask, bars ran from side to side. These bars were bolted to the sides of the cope. There were no bars in the truck or lower part of the flask.

The mold was made as follows: The lower part of the flask or truck was placed upon the ground, then partially filled with sand, which was rammed in tight. In this sand was placed a pattern which formed the shape for the mold. Then sand was placed around the pattern and rammed in tight even with the top of the truck. Then on top of the truck was placed the cope and clamped into position, and then sand was placed in the cope and rammed and packed down about the pattern, over the pattern and on a level with the top of the cope, at times covering the bars that extended from side to side of the cope. The cope was then lifted off, the pattern removed, the cope then replaced upon the truck. The cope and the truck being then clamped together, the mold was complete in form, made by the sand within the truck and the cope. The completed mold in the flask was then taken to an oven and baked until the sand was of the proper hardness.

Then the casting took place, there having been left what are known as risers in the sand in the cope through which the metal could be poured into the mold. After the metal had been poured into the mold, which was making the casting, the flask with the casting in it was permitted to stand until time to knock out the casting.

The casting would be knocked out of the flask as follows: The crane would hold the flask suspended. The men would then pound upon the sand and the casting and the sides of the flask, so as to loosen the sand within the flask, and the loosening of the sand would cause the casting to drop through the bottom of the flask or truck, the sand falling out at the same time that the casting would come. Bars were sometimes used, when working at the sand from underneath the casting, in order to more readily loosen the sand about the casting.

At the top of the cope and running around the outside was a flange four inches and a half wide and two inches thick.

Plaintiff had assisted in knocking out about twenty castings before the accident. These castings were called small castings, in that they were not as large as the casting upon which he was working at the time of the accident. The small castings were fitted into the flasks just the same as the large castings were. The small castings that plaintiff had emptied had sand around and over them and whenever the castings were broke out the sand also fell. Some of the men used sledge hammers and others used crowbars in knocking these small castings out of the flasks. Whenever the casting came out the sand came out also, and after that if any sand remained in it, it had to be knocked out. At the time the small castings were knocked out of the flask they were held suspended by the crane, the men standing upon the ground. They were held suspended from the crane just high enough from the

floor so that the men would have a good swing and give them a chance to strike with their hammers.

The flask upon which plaintiff was working at the time he was injured was at first resting upon the ground. It was desired to knock the casting out so that it would fall in a place where there was a pile of other castings. The foreman told plaintiff and his partner to get upon the flask when it was moved, and to knock out the casting. The flask was then moved over and above the pile of castings and plaintiff proceeded to knock out the casting. At the time of the accident he says that he was standing on the sand within the flask and pounding on the sand, when the sand caved in and he fell through between the sides of the flask. The flask was suspended from the crane by a chain running to the crane hook from either corner of the flask. The partner of plaintiff at the time the casting dropped through had hold of the chain."

We think it clear from the evidence that the accident occurred by reason of plaintiff's negligence, in standing on the sand, when pounding on it, for the purpose of loosening it, so that it and the casting enclosed in it would fall out, instead of standing on the flange which surrounded it. The order given to him by his foreman was to stand on the flask. Plaintiff testified: "He told me to get on top of that flask there, and got me that sledge, and told me to knock right on the sand, so as to get the sand out the same as the casting." He further testified: "I then stood right on that sand, and pounded on that sand five or six times, maybe more, then all dropped out under me."

Appellant's counsel say that the plaintiff was inexperienced in the kind of work in which he was engaged, and should have been instructed, and was not informed that the flask was bottomless, and that its contents would fall to the ground. He had knocked out the sand and casting from twenty flasks before he was directed to knock the larger casting and the sand from the flask at which the accident occurred. He testified: "The

small castings that I had emptied had sand around and over them, and whenever the castings were broke out the sand fell." This he had witnessed at least twenty times. Knowing that the sand and castings would fall out of the flask together, he needed no instruction that if he should stand on the sand, over the casting, and pound it till it would become loose and fall down, he would go down with it.

Reasonable minds could reach only one conclusion, viz: that the accident was occasioned by the plaintiff's carelessness.

The judgment will be affirmed.

*Affirmed.*